**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**RESERVE INDUSTRIES CORPORATION**
**and FMP VENTURES, INC.,**

     *Plaintiffs*,

**v.**                                  **Case No.** _____

**ROLL EM UP FRANCHISE**
**GROUP, LLC and RYAN USREY,**

     *Defendants*.

<u>**PLAINTIFFS' ORIGINAL COMPLAINT**</u>

Plaintiffs Reserve Industries Corporation ("Reserve") and FMP Ventures, Inc. ("FMP," and together with Reserve, "Plaintiffs") file this Original Complaint against Defendant Roll Em Up Franchise Group, LLC (the "Franchise Group") and Defendant Ryan Usrey ("Usrey," and together with the Franchise Group, "Defendants"). In support of its pleading, Plaintiffs show the Court as follows:

**I.      NATURE OF THE CASE**

1.     This action arises out of the sale of a franchise business located in Las Vegas, Nevada back to its franchisor, a loan made to the franchisor in connection with such sale, and the failures of the franchisor to comply with its contractual obligations in relation to such sale.

2.     The Parties entered into an asset purchase agreement setting forth the terms and conditions under which such transaction would occur. In broad terms, the Franchise Group agreed to buy, and FMP agreed to sell, the franchise business back to the Franchise Group in exchange for the assumption of the franchise's lease, assumption of a pre-existing note in favor of Reserve, and execution of an additional note payable by the Franchise Group.

3.      At issue here are 1) Defendants' failure to pay consideration pursuant to the terms of the asset purchase agreement, including default on its assumption of the pre-existing note that has now been accelerated; 2) Defendants' failure to execute and deliver all necessary documents at closing that Defendants agreed to execute and deliver when they agreed to and executed such asset purchase agreement; and 3) Defendants' violations of the representations and warranties they made in the asset purchase agreement.

4.      Upon information and belief, and despite not paying the consideration it is contractually obligated to pay Plaintiffs, the Franchise Group and Usrey have since "sold" the Franchise (as defined herein) to another individual.

## II.      PARTIES

5.      Plaintiff Reserve Industries Corporation is a New Mexico corporation with a principal place of business located at 20 First Plaza Ctr NW, Suite 308, Albuquerque, New Mexico, 87102.

6.      Plaintiff FMP Ventures, Inc. is a Nevada corporation with a principal place of business located at 2141 Henniker Way, Las Vegas, Nevada, 89134. FMP is a joint venture between Reserve and Nathaniel Pollock ("Pollock"), and all of the issued and outstanding stock of FMP is owned by Reserve and Pollock.

7.      Defendant Roll Em Up Franchise Group, LLC is a California limited liability company with a principal place of business located at 25843 Jefferson Avenue, Murrieta, California, 92562, and which may be served through its registered agent Ryan Usrey at the same address, or wherever it may be found. According to the Franchise Group's filings with the Secretary of State of California, the membership of the Franchise Group consists of one member— Defendant Ryan Usrey—who is a citizen of the State of California.

8.      Defendant Ryan Usrey is an individual residing in the State of California who may be served at his domicile located at 40732 Los Ranchos Circle, Temecula, California 92592, or wherever he may be found. Usrey is the CEO and founder of Roll-Em-Up Taquitos, and based upon information and belief, the sole member of the Franchise Group.

### III.    VENUE AND JURISDICTION

9.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 by virtue of the parties' diversity of citizenship and the value of the claims herein, which are in excess of $75,000.00, exclusive of interest and costs.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because this judicial district has personal jurisdiction over the Defendants by virtue of the forum selection clause to which Defendants consented in each of the applicable contractual agreements.

### IV.    FACTUAL BACKGROUND

11.     Reserve is a holding company for three wholly owned subsidiaries, each of which relates to one of Reserve's core businesses including operating an all-weather clean fill and inert dumpsite, holding Uranium royalties and other interests, and holding real property.

12.     Seeking to diversify its investments, Reserve became interested in franchising a restaurant. After careful consideration, Reserve decided to acquire the rights to open and operate a fast-casual restaurant that features taquitos alongside nachos and sides from Roll-Em-Up Taquitos, a restaurant franchisor operated and controlled by Defendants.

13.     Roll-Em-Up Taquitos was created when Defendant Usrey, his wife Tiffany, and his father Ron "fell in love with Mama Karen's taquitos and knew the rest of the world would[,] too." *Our Story*, www.rollemup.com/our-story/ (last visited Oct. 17, 2024). Roll-Em-Up Taquitos is owned and operated by the Franchise Group. As of 2022, there were three (3) Roll-Em-Up Taquito

brick-and-mortar locations, "with 461 in various stages of development." PR Newswire, *Roll-Em-Up Taquitos Partners Announce Creation of Bomb Af Brands*, Mar. 23, 2022, http://www.prnewsire.com/news-releases/roll-em-up-taquitos-partners-announce-creation-of-bomb-af-brands-301509132.html (last visited Oct. 17, 2024). Usrey is the founder and CEO of Roll-Em-Up Taquitos, as well as of Bomb Af Brands, LLC. *Id.*

14.    Reserve identified Pollock as an appropriate co-investor who would also oversee the investment and manage the day-to-day. Accordingly, Reserve and Pollock created a joint venture—FMP—of which they own all stock, in order to effectuate their investment in Roll-Em-Up Taquitos.

15.    On or about November 8, 2021 and through their joint venture FMP, Reserve and Pollock purchased the rights to own and operate a Roll-Em-Up Taquitos restaurant located at 3585 S. Fort Apache Road, Las Vegas, Nevada 89147 (the "Franchise") from the Franchise Group, pursuant to an area development agreement executed by FMP and Roll Em Up Franchise Group, Inc.

16.    During the first fiscal quarter of 2023, Reserve and Pollock reviewed the business activities of FMP and determined it would be appropriate to evaluate the strategic alternatives available to FMP, including a possible sale of the Franchise back to Defendants. During the second fiscal quarter of 2023, Reserve and Pollock determined it would be in the best interest of FMP and its stockholders to divest itself of its investment in the Franchise.

17.    Reserve and Pollock contacted the Franchise Group's CEO, Defendant Usrey, who expressed an interest in buying back the Franchise from FMP. Discussions continued, and the Parties agreed that FMP would sell the Franchise back to the Franchise Group (the "Sale Transaction").

18.     Upon information and belief, Usrey has since "sold" the Franchise to a new franchisee, despite not paying full consideration to FMP in the Sale Transaction.

19.     Indeed, and unbeknownst to FMP at the time of the Sale Transaction, Usrey participated in the Sale Transaction on behalf of the Franchise Group under false pretenses in order to acquire the Franchise so that he could sell it to a new franchisee without paying FMP.

### A. The Parties Enter Into The Asset Purchase Agreement

20.     On or about December 12, 2023, FMP and its stockholders Reserve and Pollock sold the Franchise back to the Franchise Group pursuant to an Asset Purchase Agreement (the "APA") dated December 12, 2023, entered into by and among FMP as seller, Reserve and Pollock as selling stockholders, and the Franchise Group as buyer. A true and correct copy of the APA is attached hereto as Exhibit A.

21.     The APA identifies the assumed liabilities, excluded liabilities, and purchase price that the Franchise Group would undertake to effectuate the Sale Transaction. The purchase price included consideration in the form of two promissory notes.

### B. Consideration Under The Asset Purchase Agreement

22.     The consideration for the Franchise "to be paid by [the Franchise Group] to [FMP] at the [c]losing" under Section 2.05 of the APA consisted of the following:

a. "$205,000.00 in the form of a secured promissory note in favor of [FMP]" (the "Promissory Note"); and
b. "the assumption of the [a]ssumed [l]iabilities, including the [s]tockholder note in the amount of $595,000.00" (the "Stockholder Note").

Exhibit A, § 2.05(a)-(b).

### 1. Defendants Failed To Make Any Payment Under The Stockholder Note

23.    The assumption of the Stockholder Note was effectuated by the Franchise Group's contemporaneous execution of an Amended and Restated Loan Agreement ("ARLA") on or about December 12, 2023. A true and correct copy of the ARLA is attached hereto as Exhibit B.

24.    By agreeing to the ARLA, the Franchise Group promised to pay Reserve a principal balance of $595,000.00, together with 7% interest, on or before the maturity date of January 1, 2029. *See* Exhibit B.

25.    The payment terms of the principal and interest are set forth in Section 2 of the ARLA, which provides:

> 2.    Payment Terms; Prepayment: Principal and interest under this Note shall be paid as follows:
>
> (a) **The Principal Amount and interest are due and payable in equal monthly installments of SIX THOUSAND SIX HUNDRED NINETY-THREE AND 75/100 DOLLARS ($6,693.75), beginning January 1, 2024, and thereafter on the first day of each succeeding month through December 1, 2028, and in one final installment on [January 1, 2029] in the amount of the unpaid principal and accrued, unpaid interest as of [January 1, 2029].** Payments will be applied first to accrued interest and the remainder to reduction of the Principal Amount. If any payment of principal or interest on this Note shall become due on a day other than a Business Day, such payment shall be made on the next succeeding Business Day.
>
> (b) Maker may, at any time and from time to time, without premium or penalty, prepay all or any portion of the unpaid Principal Balance of this Note.

Exhibit B, § 2 (emphasis added).

26.    The Franchise Group did not make the first payment due on January 1, 2024, nor has it made any payment since. Indeed, the Franchise Group has not made a single payment on the Stockholder Note in breach of its obligations under the ARLA.

27.    In an event of default, the ARLA provides Reserve with the following remedies:

> 3.    Defaults and Remedies.

. . .

(b) Remedies. If an Event of Default has occurred and is continuing:

> (i) [Reserve] may, upon written notice to [the Franchise Group], declare all or any portion of the unpaid Note Obligations to be immediately due and payable; and

> (ii) Holder shall be entitled to exercise any other rights which such Holder may have been afforded under any contract or agreement at any time and other rights which such Holder may have pursuant to applicable law.

Exhibit B, § 3(b).

28.    In accordance with Section 3(b)(i), Reserve provided Usrey, the Franchise Group, and its counsel notice of acceleration on or about August 26, 2024, making the entire Stockholder Note immediately due and payable. A true and correct copy of this correspondence is attached hereto as Exhibit C.

29.    The Franchise Group did not immediately pay the Stockholder Note, nor did it provide any response to Reserve's notice of acceleration.

### 2. Defendants Failed To Execute, Deliver, And Make Any Payments On The Promissory Note.

30.    In addition to assuming the Stockholder Note, the Franchise Group also promised to execute and deliver the Promissory Note—a secured promissory note in favor of FMP for $205,000.00, in the form attached to the APA. Exhibit A, § 2.05(a).

31.    Pursuant to the APA, this consideration was "to be paid by [the Franchise Group] to [FMP] at the Closing". Exhibit A, § 2.05.

32.    At closing of the Sale Transaction—nor at any time since, despite request—Defendants did not deliver the Promissory Note to FMP.

33.    Defendants have not made any payment under the Promissory Note.

**B.    Other Promises Under the Asset Purchase Agreement**

34.    The Franchise Group made other promises to FMP, Reserve, and Pollock in the APA that it failed to uphold and continues to do so, in further breach of the APA.

35.    For example, the Franchise Group promised to deliver certain deliverables at closing pursuant to Section 3.02(b) of the APA, including but not limited to the Promissory Note.

36.    The Franchise Group also promised to execute and deliver any additional documents or take such further actions as may be necessary to give effect to the Sale Transaction. Exhibit A, § 6.05.

37.    The Franchise Group has breached each of these contractual obligations, constituting material breaches of both the APA and the ARLA and directly causing Plaintiffs damages.

## V.    CAUSES OF ACTION

**COUNT ONE – Breach of Contract**
(the Stockholder Note pursuant to the Amended and Restated Loan Agreement)

38.    Plaintiffs hereby incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

39.    The Franchise Group, by and at Usrey's direction, executed the Stockholder Note pursuant to the ARLA on or about December 12, 2023, in connection with the Sale Transaction.

40.    In doing so, the Franchise Group promised to pay Reserve a principal amount of $595,000 at a rate of 7% interest on or before January 1, 2029. The payment terms of the Stockholder Note as provided by the ARLA was equal monthly payments of $6,693.75 to be paid on the first of every month beginning January 1, 2024 through December 1, 2028, with one final installment on January 1, 2029 of the amount of the remaining principal and accrued, unpaid interest as of that date. Exhibit B, § 2.

41.     The Franchise Group has yet to make a single payment under the Stockholder Note. Indeed, the first payment was due on January 1, 2024. The Franchise Group failed to make that payment, and all nine (9) additional payments thereafter. The Stockholder Note has been accelerated by Reserve pursuant to the terms of that agreement and is now immediately due and payable.

42.     Reserve has satisfied all conditions precedent to seeking relief for the Franchise Group's default under the ARLA and breach of contract.

43.     The Franchise Group's failure to pay the Stockholder Note in accordance with its terms constitutes a material breach of the ARLA.

44.     Reserve has been damaged as a direct result of the Franchise Group's material breach of the ARLA and is therefore entitled to judgment in the amount of $595,000 at a rate of 7% interest as set forth in the ARLA.

45.     Reserve is also entitled to all reasonable and documented out-of-pocket costs and expenses of Reserve in connection with the collection of any payments due under the ARLA or the enforcement of the ARLA including, without limitation, attorneys' fees.

46.     Plaintiffs are further entitled to pre- and post- judgment interest, reasonable attorneys' fees, and costs incurred by enforcing the Franchise Group's contractual obligations under the APA.

**COUNT TWO – Breach of Contract**
(the Asset Purchase Agreement)

47.     Plaintiffs hereby incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

48.     Plaintiffs and the Franchise Group, by and at Usrey's direction, executed the APA on or about December 12, 2023.

PLAINTIFFS' ORIGINAL COMPLAINT                                                    PAGE 9 OF 15

49.    In accordance with Section 3.02(b) of the APA, the Franchise Group agreed to provide certain deliverables at closing ("Buyer's Closing Deliverables") including, but not limited to, the Promissory Note.

50.    The Franchise Group failed to deliver all of Buyer's Closing Deliverables at closing.

51.    The Franchise Group's failure to deliver all of Buyer's Closing Deliverables constitutes a material breach of the APA.

52.    As a direct result of the Franchise Group's material breach of the APA, Plaintiffs have been damaged at least in the amount of $205,000.00, excluding interest, for which they seek recovery here.

53.    This conduct by the Franchise Group was malicious, willful, wanton, reckless, fraudulent, or committed recklessly with wanton disregard for Plaintiffs' rights, entitling Plaintiffs to punitive damages.

54.    Plaintiffs and the Franchise Group further agreed, pursuant to Section 7.10 of the APA, that any party's failure to perform in accordance with the terms of the APA would result in irreparable damage and would entitle the other party to seek specific performance of the terms of the APA, in addition to any other remedy to which they are entitled at law or in equity.

55.    Accordingly, and expressly in the alternative, Plaintiffs hereby further seek specific performance under the APA and delivery of all Buyer's Closing Deliverables, including the executed Promissory Note.

56.    Plaintiffs have satisfied all conditions precedent to seeking such relief.

57.     Plaintiffs are further entitled to pre- and post- judgment interest, reasonable attorneys' fees, and costs incurred by enforcing the Franchise Group's contractual obligations under the APA.

## COUNT THREE – BREACH OF CONTRACT
(Representations and Warranties Under the Asset Purchase Agreement)

58.     Plaintiffs hereby incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

59.     In executing the APA, Defendants represented and warranted that the Franchise Group "shall (a) be able to pay its debts as they become due" and "(c) have adequate capital to carry on its business." Exhibit A, § 5.06.

60.     Defendants further represented and warranted that "[i]n connection with the transactions contemplated hereby, [the Franchise Group] has not incurred, nor plans to incur, debts beyond its ability to pay as they become absolute and matured." Exhibit A, § 5.06.

61.     The Franchise Group is unable to pay its debts as they became due and incurred debts beyond its ability to pay in breach of its representations and warranties to Plaintiffs.

62.     The Franchise Group's breach of its representations and warranties as to solvency and sufficiency of funds is material.

63.     Plaintiffs have been damaged as a direct result of the Franchise Group's material breach of the APA at least in the amount of $800,000.00 as contemplated by the consideration identified therein, exclusive of interest, for which Plaintiffs seek recovery.

64.     This conduct by the Franchise Group was malicious, willful, wanton, reckless, fraudulent, or committed recklessly with wanton disregard for Plaintiffs' rights, entitling Plaintiffs to punitive damages.

65.    Plaintiffs are further entitled to pre- and post- judgment interest, reasonable attorneys' fees, and costs incurred by enforcing the Franchise Group's contractual obligations under the APA.

### COUNT FOUR – Unjust Enrichment In the Alternative

66.    Plaintiffs hereby incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

67.    "To prevail on a claim for unjust enrichment, 'one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust.'" *City of Rio Rancho v. Amrep Southwest Inc.*, 150 N.M. 428, 428-29 (2011) (quoting *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051 ¶ 11, 129 N.M. 200, 3P.3d 695).

68.    Pleading in the alternative and only to the extent any of the agreements between the Parties is found to be unenforceable, the Franchise Group knowingly benefitted by accepting the Franchise itself at great expense to Plaintiffs, who have not received any of the agreed consideration totaling $800,000.00 exclusive of interest. Allowing the Franchise Group to retain this benefit at Plaintiffs' expense would be unjust.

69.    Plaintiffs therefore seek recovery of $800,000.00. Plaintiffs are further entitled to pre- and post-judgment interest, reasonable attorneys' fees, and costs incurred in pursuing this claim for unjust enrichment.

### COUNT FIVE – Disgorgement

70.    Plaintiffs hereby incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

71.     Defendants had no right to sell the franchise rights without complying with its obligations to make the required payments as contemplated by the Asset Purchase Agreement.

72.     By selling the franchise rights without complying with its obligations to make the required payments as contemplated by the Asset Purchase Agreement, Defendants have acted illegally and/or wrongfully.

73.     There exists a direct causal connection between Defendants' wrongful and/or unlawful conduct and the Defendants' receipt of the profits from the improper sale.

74.     Defendants' unlawful and wrongful conduct requires the disgorgement of any profits from the improper sale to a third party of the Franchise.

**COUNT SIX – Attorneys' Fees**

75.     Plaintiffs hereby incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

76.     Plaintiffs seek to recover their costs and attorneys' fees pursuant to the Parties' agreements, including but not limited to Section 16 of the ARLA and Section 15 of the Promissory Note, and any other applicable law or statute.

77.     Plaintiffs further request an award of pre- and post-judgment interest at the maximum rate allowed by applicable law, including but not limited to NMSA § 56-8-4 (2023).

**COUNT SEVEN – Punitive Damages**

78.     Plaintiffs hereby incorporate the allegations contained in the foregoing paragraphs as if fully set forth herein.

79.     Defendants' actions in selling the franchise rights without making a single monthly payment as required by the Asset Purchase Agreement for ten months and the other failures and

refusals set forth above show a malicious, reckless, oppressive, willful, wanton, and/or intentional breach of the Asset Purchase Agreement.

80.    As a result of Defendants' malicious, reckless, oppressive, willful, wanton and/or intentional conduct, Plaintiffs are entitled to punitive damages.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Reserve Industries Corporation respectfully prays that:

A.  Plaintiffs be awarded actual, compensable, and punitive damages as alleged herein;

B.  Plaintiffs be awarded its costs of suit and reasonable attorneys' fees;

C.  Plaintiffs be awarded pre- and post-judgment at the maximum amount allowed by law;

D.  Defendants be disgorged of their ill-gotten profits from the secondary "sale" of the Franchise; and

E.  Plaintiffs be awarded such other and further relief as the Court deems just and proper.

Dated: **October 23, 2024**                    Respectfully submitted,

ATKINSON, BAKER & RODRIQUEZ, P.C.

*/s/ Douglas A. Baker*
Clifford K. Atkinson
Douglas A. Baker
Owen E. Barcala
201 Third St. NW, Suite 1850
Albuquerque, New Mexico 87102
Tel: 505.764.8111
catskinson@abfirm.com
dbaker@abfirm.com
obarcala@abfirm.com

*and*

BAKER & HOSTETLER, LLP

Todd J. Thorson (*pro hac vice* forthcoming)

Ambika B. Singhal (*pro hac vice* forthcoming)
2850 North Harwood Street, Suite 1100
Dallas, Texas 75201-2640
Tel: 214.210.1200
Fax: 214.210.1201
tthorson@bakerlaw.com
asinghal@bakerlaw.com

*Attorneys for Plaintiffs Reserve Industries
Corporation and FMP Ventures, Inc.*